M. Ruby, Administrator, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant, and Otto Thomas, Appellee, v. Same.

**Consolidation of actions:** STIPULATION : ENFORCEMENT AT SUBSEQUENT
TERM.   Where actions are not such that the court has authority to consolidate the same for trial upon the motion of one of the parties, a stipulation for consolidation which is not general in its terms and intended to cover any and all terms of court at which the case may be called for trial should not be enforced at a subsequent term, as against the application of one of the parties for a separate trial.

**Jurors:** EXAMINATION : UNDUE LIMITATION OF RIGHT. A party should
be permitted to examine jurymen with·regard to their attitude

concerning the nature of the action. so as to enable an intelligent exercise of peremptory challenge.

In this case the examination was unduly limited.

**Examination of witnesses:** LIMITATION AS TO NUMBER. The court has power to limit the number of witnesses to be examined upon a given proposition, but as a rule witnesses are produced and examined with respect to the ultimate effect their evidence may have upon the jury, and this power to limit the number should be exercised in advance of their examination.

**Evidence:** CONCLUSIVE AND ARGUMENTATIVE. The testimony of a witness in effect permitting him to pass judgment upon his own conduct or bolster up his testimony with an argumentative statement should not be received, as where a witness was asked what he would have done had he heard the signals of an approaching train.

**Railroads:** CROSSING ACCIDENT: EVIDENCE: SPEED OF TRAIN. Where there is no such showing of similarity of conditions and circumstances as to justify its admission comparative evidence is not admissible. Thus, evidence of the time it would take a passenger train to cover a certain distance was not admissible, where, as in this case, the injury was caused from collision with a freight train.

**Same:** EVIDENCE: CONCLUSION. Not every question calling for an answer in the nature of a conclusion is improper. Thus, a witness may testify directly as a fact whether or not there were obstructions at a railway crossing concealing the view of a train.

**Same:** EVIDENCE: *Res gestae.* The statements of another party which are not so connected in point of time with the transaction in question as to make them a part of the *res gestae* are not admissible as such.

*Appeal from Appanoose District Court.*—HON. FRANK W. EICHELBERGER, Judge.

TUESDAY, FEBRUARY 7, 1911.

THESE actions were separately commenced in the district court of Appanoose County, one being to recover damages for the death of John Pollock, deceased, and the other to recover damages caused by the killing of a team of

horses belonging to plaintiff, Thomas.   Over defendant's objections the cases were tried together resulting in a verdict for plaintiff in each case, and defendant appeals.— *Reversed* and *remanded*.

*Cook, Hughes & Sutherland,* for appellant.

*Howell & Elgin,* for appellee.

Deemer, J.—This litigation arose over an accident happening at a highway crossing in Appanoose County, and another case involving the same collision has once been in this court, the opinion being found in *Stotelmeyer v. Chicago, M. & St. P. R. Co.,* 148 Iowa, 278.   In view of the very full statement of the case made in that opinion we shall not now make a detailed statement of the facts. Something like fifty-three propositions are made for a reversal, and it is manifest that to consider all of them would unduly extend this opinion and accomplish no useful purpose.   We shall consider but few of the many points presented.

I.   This is the second trial of these cases.   When they were first called in the district court the following agreement was made:  "By agreement of the parties, cause No.

1. Consolidation of actions: stipulation: enforcement at subsequent term.

12,790, being the case of *Otto Thomas v. Chicago, Milwaukee & St. Paul Railway Company,* and cause No. 12,781, being the cause of *M. Ruby, Administrator, v. Chicago, Milwaukee & St. Paul Railway Company,* are to be tried together at the same time and by the same jury, but separate verdicts are to be asked and rendered.   Each party reserves all rights and are to be entitled to exceptions to all rulings in the trial the same as though the cases were tried separately."   Upon this agreement the case proceeded to trial, resulting in the discharge of the jury and a continuance of the case to the next term.   At the subse-

quent term the cases were again called, and defendant then asked a separate trial of each case. This request was denied, and exception duly taken. It is conceded that the cases are not such as that under our practice they could have been consolidated upon motion, and it follows that defendant's request for separate trials should have been granted unless it be for the agreement hitherto quoted, made when the cases were first called. As a rule these stipulations are to be treated as applying only to the terms at which they are made unless it appears from the terms thereof that they were intended to be of general application, and for any and all terms. *Hewitt v. Week,* 51 Wis. 368 (8 N. W. 269); *Phelps v. Hall,* 2 Tyler (Vt.) 401; *Benbow v. Robbins,* 72 N. C. 422. If it be conceded that there be doubt regarding the proper construction of the agreement the trial court should have granted the defendant's request at the second trial, for the cases were not such as that they could have been consolidated upon motion by either party under our practice.

II. Defendant's counsel were unduly limited in the examination of the jurors on their *voir dire.* A sample question and the ruling thereon will suffice to demonstrate the error: "Q. Have you any such feeling that because there has been an accident that the railroad company ought to be compelled to pay for it? (Objected to as incompetent. Objection sustained. Defendant excepts.) Q. The mere fact that there occurs an accident at a railroad crossing, does that create in your mind, or are you conscious of having that kind of a feeling, that on account of that accident the railroad company ought to pay for it? (Same objection, ruling, and exception as the last. The defendant asks leave to ask the same question to each of the other jurymen. Same objection, ruling, and exception as the last.)" Under the rule existing in this state defendant was entitled to have these questions answered in order that it might

2. JURORS: examination: undue limitation of right.

intelligently exercise its peremptory challenges. *Simons v. Ry. Co.,* 128 Iowa, 139; *State v. Dooley,* 89 Iowa, 584; *Brusseau v. Lower Brick Co.;* 133 Iowa, 245.

III. During examination of two of defendant's witnesses the following occurred: "Q. Do you remember the burning of the right of way in the fall of 1906, at the place in controversy? (Objected to as they have had the limit of witnesses on that question. Objection sustained. Defendant excepts.) Q. Did you find any point from the eastern extreme of that hedge to its western extreme where the ground on which the hedge stood at any point was as high as the traveled portion of the wagon road immediately north of it? (Plaintiff objects to the reading as to the measurements taken by this witness as they have had six witnesses on that subject, and as immaterial. Objection sustained on the ground that there has been the full number of witnesses allowed by the court on the question of the description of the crossing and hedge. Defendant excepts.) Q. Take a point where the north line of the wagon road, as it is indicated by the hedge fence to the east and to the west, runs along here east and west, if you were to start from that point on the north rail where that line would intersect and measure in a straight line west, how far would that line be before it would get down to the bottom of the grade or the natural surface of the ground? (Same objection; each side having six witnesses on the crossing. Objections sustained. Defendant excepts.) Q. What do you say is the distance between the east end of the hedge fence you found there at the time you made this plat and the railroad track, north rail, directly east of it? (Same objection, ruling and exception as the last.)" Down to this time, which was after defendant had entered upon its defense and introduced several witnesses, no intimation had been given by the court or opposing counsel that there was to be any

3. Examination of witnesses: limitation as to number.

limitation upon the number of witnesses to be examined upon any particular point. Of the power of the court to limit the number of witnesses to be used by either party upon a given point or proposition there is no doubt. But the order should be made either in advance of trial or before the party to be affected thereby has introduced his testimony upon the point. Otherwise the party might lose his most important witnesses and be deprived of their testimony. Ordinary attorneys marshal their testimony for the ultimate effect it will have upon the jury, and the court has no power over the matter, unless he notifies them in advance that he will limit the number of witnesses upon a given point. This is the rule announced in *Everett v. U. P. R. Co.*, 59 Iowa, 243, and other like cases, and it should have been followed on this trial.

IV. A witness by the name of Stotelmeyer was called by plaintiff, and after testifying that the whistle did not blow or the bell of the engine, which did the damage complained of, ring, was asked: "Q. You say the whistle did not blow nor the bell ring. If you had heard the whistle blow or the bell ring, would you have made the last start up that narrow dump where you say you could not turn around, where it was only eight feet wide? (Objected to as incompetent. Overruled. Defendant excepts.) A. No. Q. When he would take his eyes off the road there, seeing the track there in that narrow dump, and look to the west, would he take a long look to the west and neglect his horses, and let them run off the dump as they were apt to, or would it be quick? (Objected to as leading and suggestive. Overruled. Defendant excepts.) A. He would look quick." These answers were clearly incompetent. They simply permitted the witness to pass upon his own conduct or to bolster up his testimony by an argumentative statement. They in no manner related to the conduct of the deceased or offered any explanation thereof.

4. EVIDENCE: conclusive and argumentative.

One of plaintiffs was permitted, over defendant's objections, to testify as to the time it took a passenger train to cover a certain distance from the crossing where the collision occurred. The train which did the damage was a freight train, and there was no such showing of similarity of conditions and circumstances as would justify this testimony. It is well known that the schedule of a passenger train is much faster than that of a freight, and the testimony should not have been received.

5. Railroads:
crossing accident: evidence: speed of train.

Defendant sought to show that the crossing was not obstructed, or, rather, that there were no obstructions which would prevent the sight of an approaching train, and it called a witness to show that there were no obstructions. This was objected to as a conclusion. True, the question called for an answer which was in form a conclusion, but it also called for a fact. If there were in fact no obstructions a witness might so testify as a fact, and his answer would not be objectionable as a conclusion.

6. Same:
evidence: conclusion.

Defendant offered to show what Stotelmeyer and Lynn, who were in company with Pollock, the deceased, at the time of the accident, said regarding how it occurred. Objection to the question was sustained. Defendant claims that this was part of the *res gestae* and should have been admitted. This may be true, but defendant did not so connect the statements with the accident as to make them part of the *res gestae* and there was no error in the ruling.

7. Same:
evidence: *res gestae.*

Other matters are discussed which need not be considered for they will not arise upon a retrial. But, for the errors pointed out, the judgment must be reversed and the cause remanded.—*Reversed* and *remanded.*